STATE OF MAINE *vs.* IRVING L. MCINTOSH.

Androscoggin.    Opinion December 31, 1903.

</div>

*Intox. Liquors* Common Nuisance,—when not. *Evidence.   R. S. (1883), c. 17, § 1.*

One or more unlawful sales of intoxicating liquors in a place does not necessarily and as a matter of law make that place a common nuisance; the place must be habitually, commonly used for the purpose before it becomes a common nuisance.

Exceptions by defendant.    Sustained.

This was an indictment under R. S. (1883), c. 17, § 1, wherein the defendant was charged with keeping and maintaining a liquor nuisance in the town of Lisbon between October 1st, 1902, and the date of the indictment.    The intoxicating liquors in question consisted of six dozen bottles of Jamaica Ginger found on the defendant's premises.    The defendant during the time covered by the indictment was the proprietor of a store in the village of Lisbon Falls connected with which was a billiard and pool room.    His stock of goods consisted of tobacco, cigars, confectionery, fruit, nuts, soda beers, canned goods, patent medicines of various kinds, and three brands of Jamaica Ginger, viz., Sanford's, Gilt Edge, and Anchor Mills, the last named being the particular brand seized by the officers and carried in materially larger quantities than the others.

The analysis of this brand was found to be as follows:

| | |
|---|---|
| Total solids | 11.70 % |
| Resin | .02 % |
| Fixed oil | Trace. |
| Volatile oil | .066 % |
| Residue, caramel and sugar extractive. | |
| Alcohol | 44.90 |
| Water sufficient to make | 100. % |

The evidence tended to show that the compound contained the full medicinal strength of the ginger.

There was evidence tending to show that this brand of Jamaica Ginger contained only a trace of resin, while the brands generally sold and used for medicinal purposes contained a considerable proportion of resin, which made it practically impossible to use them as a beverage, the resin being the irritant which exists in the usual brands. The evidence of the defense, however, tended to show that all of the various brands on the market could be used as a beverage.

The evidence further tended to show that Jamaica Ginger is a common article of commerce and is sold by nearly all druggists and grocers as a medicine, it being a common household remedy; that the standard test Jamaica Ginger, as provided by the United States Pharmacopoeia formula, contains 94 per cent of alcohol, and that the brands and qualities ordinarily sold by druggists and grocers contain from 40 per cent to 60 per cent of alcohol.

There was evidence tending to show that this compound was kept and sold by the defendant, but there was no direct evidence that it was sold or kept to be sold as a beverage, the defendant claiming that what was sold was sold in the ordinary course of business as a medicine. There was evidence, however, tending to show that empty bottles, in considerable numbers, similar in shape and in markings to those containing the Jamaica Ginger seized by the officers were found some rods from the defendant's store, but the evidence also tended to show that the place where these empty bottles were found was no nearer to the defendant's store than to other stores, in one of which similar ginger had been sold.

There was evidence tending to show that all of the various brands of Jamaica Ginger on the market were intoxicating if drank in sufficient quantities.

The presiding justice, among other things, instructed the jury as follows: "You will inquire whether from all the facts and circumstances in this case you are satisfied beyond a reasonable doubt that he (the defendant) has sold any of that ginger between the first day of October and the date of this indictment. If so, then I instruct you· that he is guilty of keeping a nuisance under the indictment."

The defendant's counsel requested the presiding justice to instruct the jury, as follows, which he declined to do:—

"If the Jamaica Ginger in question was sold or kept to be sold, given away, drank or dispensed by the defendant as a beverage, the jury should convict, but if it was kept or sold only as a medicine, they should acquit, although the compound might be intoxicating."

To this instruction and refusal to instruct the defendant excepted. The entire charge was made a part of the exceptions.

*W. B. Skelton*, County Attorney, for State.

Counsel cited: *Com.* v. *Ramsdell*, 130 Mass. 68, 69; *Com.* v. *Hallett*, 103 Mass. 452; *James* v. *The State*, 21 Tex. App. 353, 355; *State* v. *Laffer*, 38 Iowa, 426; *Intox. Liquor Cases*, 25 Kan. 751, 767; *State* v. *Wilson*, 80 Mo. 303, 307; *State* v. *Shaw*, 31 Maine, 522, 523; *State* v. *Eaton*, 97 Maine, 289.

*R. W. Crockett and R. F. Springer*, for defendant.

Counsel cited: *State* v. *Stanley*, 84 Maine, 555; *Com.* v. *Canny*, 158 Mass. 210; *State* v. *Haymond*, 20 W. Va. 18, 43 Am. Rep. 787; *King* v. *State*, 58 Miss. 737, 38 Am. Rep. 344.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WISWELL, C. J. The respondent was tried upon an indictment charging him with maintaining a common nuisance under R. S. (1883), c. 17, § 1.

In the course of his charge the presiding justice instructed the jury, in substance, that if they were satisfied beyond a reasonable doubt that the respondent had sold any intoxicating liquor during the period covered by the indictment, he would be guilty of maintaining a nuisance under the indictment, to which instruction an exception was seasonably taken. The respondent having been found guilty, brings the case to the law court upon this and other exceptions.

The instruction complained of was undoubtedly erroneous. One or more unlawful sales of intoxicating liquor in a place does not necessarily, and as a matter of law, make that place a common nuisance. The place must be habitually, commonly used for the purpose before it becomes a common nuisance. *State* v. *Stanley,* 84 Maine, 555.

We have examined the whole charge, which is made a part of the exceptions, to see if this instruction was not so limited and explained in other parts of the charge as to prevent any danger of a misconception upon the part of the jury as to what constituted the offense charged by the indictment. But while the offense was clearly and properly explained in other portions of the charge, we think that this instruction was given as a separate and independent proposition to such an extent that the jury would be warranted in believing that a single unlawful sale of intoxicating liquors by the defendant in his shop would make that shop a common nuisance under the statute, and the respondent guilty of maintaining such nuisance.

As this disposes of the case, it is unnecessary to consider the questions raised by the other exceptions.

*Exceptions sustained.*